IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

KIMBERLY A. FRIESEN,

        Plaintiff,

vs.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security;

        Defendant.

4:18CV3087

**MEMORANDUM AND ORDER**

Plaintiff Kimberly Friesen ("Plaintiff") claims in this Social Security appeal that the Commissioner's decision to deny her benefits under the Social Security Act is contrary to law and not supported by substantial evidence. Having considered all arguments and materials presented, and for the reasons explained below, the Commissioner's decision will be affirmed.

**PROCEDURAL BACKGROUND**

On April 4, 2015, Plaintiff filed an application for supplemental benefits under the Social Security Act. (TR. 179.) Plaintiff's application was denied initially and on reconsideration. Plaintiff filed a request for hearing in September, 2015. (TR. 117.) An administrative hearing was held before an administrative law judge ("ALJ") on March 17, 2017. (TR. 36.)

On June 20, 2017, the ALJ issued an unfavorable decision. (TR. 12.) In the decision, the ALJ evaluated Plaintiff's claim by following the five-step sequential analysis prescribed by the Social Security Regulations.[1] *See* [20 C.F.R. § 416.920](). The ALJ found Plaintiff had the severe

---

[1] The Social Security Administration uses a five-step process to determine whether a claimant is disabled.

    At the first step, the claimant must establish that he has not engaged in substantial gainful activity. The second step requires that the claimant prove he has a severe impairment that significantly limits his physical or mental ability to perform basic work activities. If, at the third step, the claimant shows that his impairment meets

impairments of "diabetes, mellitus, fibromyalgia, costochondritis, dysthymic disorder, a left tibia/fibula fracture (status post open reduction internal fixation), and anxiety disorder." (TR. 17.) The ALJ formulated Plaintiff's residual functional capacity ("RFC")[2] as follows:

> [Plaintiff] has the residual functional capacity to perform sedentary work . . . except: She is able to lift and/or carry ten pounds occasionally. She can stand and/or walk about 2 hours in an 8-hour workday (with normal breaks) and can sit about 6 hours (with normal breaks). She can occasionally climb ramps, stairs, ladders, ropes and scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to extreme cold. She is limited to performing simple, routine, and repetitive tasks with only occasional decision-making and changes in the work setting. She can only have occasional interaction with both coworkers and the public.

(TR. 20.) The ALJ found that Plaintiff does not have any past relevant work but concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (TR. 25-26.) These jobs include document preparer, addressor, and office helper. (TR. 25-26.) Based on these findings, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (TR. 27.)

Plaintiff requested review of the ALJ's decision by the Appeals Council on August 21, 2017. (TR. 173.) The Appeals Council denied the request for review on April 23, 2018. (TR. 1.) Having been denied review by the Appeal Council, the ALJ's decision stands as the final decision of the Commissioner of Social Security.

---

or equals a presumptively disabling impairment listed in the regulations, the analysis stops and the claimant is automatically found disabled and is entitled to benefits. If the claimant cannot carry this burden, however, step four requires that the claimant prove he lacks the RFC to perform his past relevant work. Finally, if the claimant establishes that he cannot perform his past relevant work, the burden shifts to the Commissioner at the fifth step to prove that there are other jobs in the national economy that the claimant can perform.

*Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006) (citations omitted).

[2] "RFC" is what a claimant "is able to do despite limitations caused by all of the claimant's impairments." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (citation omitted).

**ANALYSIS**

A denial of benefits by the Commissioner is reviewed to determine whether the denial is supported by substantial evidence on the record as a whole. *See Hogan v. Apfel*, 239 F.3d 958, 960 (8th Cir. 2001). "Substantial evidence" is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *Id.* at 960-61; *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). Evidence that both supports and detracts from the Commissioner's decision must be considered, but the decision may not be reversed merely because substantial evidence supports a contrary outcome. *See Moad v. Massanari*, 260 F.3d 887, 890 (8th Cir. 2001).

On appeal, Plaintiff argues that the ALJ erred in placing limited weight on the opinion of Plaintiff's treating family physician, Dr. Steven Husen ("Dr. Husen"). Plaintiff further contends that because the ALJ failed to afford proper weight to Dr. Husen's opinion, the hypothetical question posed to the vocational expert failed to include all limitations supported by the evidence. For the reasons stated below, the Court concludes that substantial evidence supports the Commissioner's decision.

1.  **Treating Physician**

Plaintiff argues that the ALJ failed to accord proper weight to the opinion of her treating primary care physician, Dr. Husen. Plaintiff further argues that the ALJ failed to give good reasons for the weight placed upon Dr. Husen's opinion. "A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Medhaug v. Astrue*, 578 F.3d 805, 815 (8th Cir. 2009) (quotation omitted). A treating physician's opinion does not automatically control because the record must be evaluated as a whole. *Id.* "An ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id.* (quotation omitted). Still, "[w]hether granting a treating physician's opinion substantial or little weight . . . the

commissioner must always give good reasons . . . for the weight she gives." *Rentzell v. Berryhill, Case No. 4:17CV3037, 2018 WL 2050559, at \*8 (D. Neb. May 1, 2018)* (internal quotations and citations omitted).

Dr. Husen has treated Plaintiff for various conditions since 1998. (TR. 588.) On February 21, 2017, Dr. Husen completed a Medical Source Statement in connection with Plaintiff's disability claim. (TR. 588-592.) Dr. Husen identified Plaintiff's symptoms as cognitive dysfunction, non-restorative sleep, muscle pain, muscle weakness, insomnia, myofascial pain syndrome, malaise, chronic fatigue syndrome, waking unrefreshed, and cognitive impairment. (TR. 588.) When asked to identify the medical findings that support Plaintiff's complaints of pain, Dr. Husen responded that Plaintiff had "subjective [complaints of] pain on every visit usually rating pain 7-8/10 point pain scale" and that Plaintiff "clinically appears to be in pain when she is [complains of] pain." (TR. 589.) As to clinical findings, Dr. Husen stated "multiple trigger points, [especially] upper back [and] shoulders, multiple trigger points both upper [and] lower [extremities], severe pain [and] restriction of motion [left] knee." (TR. 589.)

In the Medical Source Statement, Dr. Husen opined that Plaintiff would likely be off task twenty-five percent or more of a typical workday and that Plaintiff's symptoms would interfere with attention and concentration. (TR. 590.) Dr. Husen also stated that Plaintiff would need breaks every fifteen to thirty minutes and that she would likely be absent from work more than four times per month. (TR. 590-91.) He indicated that Plaintiff would not be able to work more than three hours per day and that Plaintiff would be unable to do any lifting, pulling or pushing. (TR. 592.) He further opined that Plaintiff would be unable to stand for more than thirty minutes at a time or deal with stress in the work place. (TR. 592.) Dr. Husen found that Plaintiff had marked restrictions in activities of daily living, moderate difficulties in social functioning, and extreme deficiencies in concentration, persistence, and pace. (TR. 591.) Dr. Husen opined that Plaintiff's prognosis is poor and that he does not anticipate any significant improvement in her condition. (TR. 592.) He stated that Plaintiff is totally disabled and cannot work due to her pain and cognitive impairment. (TR. 592.)

The ALJ assigned Dr. Husen's opinion limited weight, finding that it lacked objective support and appeared to be based almost solely on Plaintiff's subjective complaints of pain. (TR. 24.) The ALJ also determined that Dr. Husen's opinion was inconsistent with his own treatment notes and other medical evidence of record. (TR. 24.) The ALJ assigned no weight to Dr. Husen's opinion as it pertained to Plaintiff's restrictions in activities of daily living and social functioning, as well as his opinion regarding Plaintiff's deficiencies in concentration, persistence, or pace. (TR. 24.) The ALJ stated that Dr. Husen's records did not record any findings to support such extreme limitations. (TR. 24.) Having reviewed the matter, the Court concludes that the record supports the weight placed on Dr. Husen's opinion.

In discounting Dr. Husen's opinion, the ALJ stated that Dr. Husen's opinion was not based on clinical findings but was instead based on Plaintiff's subjective complaints of pain. (TR. 24.) As shown in the record, Plaintiff's chief medical complaints include fibromyalgia, left knee pain, anxiety, and depression. The ALJ stated that Plaintiff's subjective complaints regarding the severity of her conditions were inconsistent with other evidence of record. For instance, the ALJ noted that Plaintiff has indicated that she is still able to shop for groceries, visit her neighbor, care for her personal needs, prepare meals, care for her pets, do housework, and watch television for extended periods of time. (TR. 21; TR. 210; TR. 226-27; TR. 269-70.) These activities are inconsistent with the severe limitations opined to by Dr. Husen. *See Toland v. Colvin*, 761 F.3d 931, 936 (8th Cir. 2014) (finding that ALJ properly discounted treating physician's opinion about claimant's limitations because claimant's admitted activities suggested she was capable of doing more that her treating physician indicated); *Julin v. Colvin*, 826 F.3d 1082, 1089 (8th Cir. 2016) (stating that an ALJ may discount a treating physician's opinion derived from a claimant's less than credible subjective recitation of symptoms). Because Dr. Husen's opinion seems to be largely based on Plaintiff's subjective complaints, and because the severity of Plaintiff's complaints of pain are not supported by the record, the ALJ properly discounted Dr. Husen's opinion.

In explaining the limited weight given to Dr. Husen's opinion, the ALJ also stated that Dr. Husen's lack of specificity as to clinical findings diminished the persuasiveness of his opinion. (TR. 24.) This is a proper basis upon which to discount a treating physician's opinion. *See Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009) (stating that conclusory opinions of treating

5

physicians do not compel a finding of disability and ALJ acted within acceptable zone of choice in declining to give them controlling weight). Regarding his clinical findings, Dr. Husen simply stated that Plaintiff had "multiple trigger points, [especially] upper back [and] shoulders, multiple trigger points both upper [and] lower [extremities], severe pain [and] restriction of motion [left] knee." Dr. Husen's opinion is conclusory as it provides very little explanation for his physical assessments and clinical findings.

The ALJ further found that Dr. Husen's opinion was inconsistent with his own treatment notes and other medical opinions of record. (TR. 24.) Dr. Husen's treatment records set out Plaintiff's complaints of pain stemming from fibromyalgia and a knee injury. However, in several places, his treatment notes indicate that he found Plaintiff's gait, stance, balance, deep tendon reflexes, and motor strength normal. (TR. 417; TR. 453-55.) Moreover, despite Plaintiff's complaints of pain, Dr. Husen's treatment notes from February, 2016 indicate that he encouraged Plaintiff to be more active and to do more walking. (TR. 511.) Dr. Husen's recommendation that Plaintiff be less sedentary certainly conflicts with his opinion that she is totally disabled. *See Davidson*, 578 F.3d at 843 ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes").

Moreover, Dr. Husen's opinion as to the severity of Plaintiff's knee limitations are entirely inconsistent from the findings of Plaintiff's treating orthopedic surgeon, Dr. Scott Lemek ("Dr. Lemek"). Dr. Lemek performed knee surgery on Plaintiff in 2014. (TR. 549.) On September 15, 2016, an x-ray of Plaintiff's knee revealed that the hardware in her knee was all in good position and her previous fractures were well healed. (TR. 550.) At a follow-up appointment with Dr. Lemek on September 29, 2016, an x-ray of Plaintiff's knee showed some displacement of the fracture, but it was not severe enough to take further medical action. (TR. 553.) Another x-ray of Plaintiff's knee on October 13, 2016, revealed healing with no further displacement. (TR. 555.) On November 14, 2016, Plaintiff returned to Dr. Lemek and reported that she was doing much better and not experiencing too much pain. (TR. 559.) An x-ray showed that her knee fracture was pretty well healed. (TR. 560.) At that time, Dr. Lemek noted that Plaintiff was neurovascularly intact with good knee range of motion. (TR. 560.) At a follow-up appointment on November 28, 2016, Dr. Lemek again observed that Plaintiff had good knee range of motion.

6

(TR. 562.) At another appointment on December 27, 2016, Plaintiff told Dr. Lemek that she was doing well with no real pain, problems, or complaints. (TR. 563.) Dr. Lemek noted that Plaintiff's knee range of motion was good and instructed Plaintiff to discontinue physical therapy and increase her activities. (TR. 564.)

However, on February 8, 2017, less than two months after her last visit to Dr. Lemek, Plaintiff saw Dr. Husen for a follow-up appointment. (TR. 579.) Dr. Husen found that Plaintiff had marked arthritic changes in her left knee with limited mobility in the knee. (TR. 582.) Then, on February 21, 2017, Dr. Husen opined in his Medical Source Statement that Plaintiff's severe pain and mobility impairment in her left knee, as well as fibromyalgia pain, prevented her from working. (TR. 589-90.) Clearly, Dr. Husen's opinion as to Plaintiff's knee condition and the limitations imposed by this condition is completely at-odds with the opinion of Plaintiff's treating orthopedic specialist. *See Hensley v. Barnhart*, 352 F.3d 353, 356 (8th Cir. 2003) (holding that the ALJ's decision to discount treating physicians' opinions was proper when the treating physicians' opinions conflicted with the opinion of a specialist).

Dr. Husen also opined that Plaintiff has significant mental health deficits. (TR. 588.) This portion of Dr. Husen's opinion was given no weight by the ALJ. (TR. 24.) Dr. Husen stated that Plaintiff had marked restrictions of daily living, moderate difficulties in maintaining social functioning, and extreme deficiencies of concentration. (TR. 591.) However, Plaintiff's treatment records do not include findings to support such extensive limitations. It does not appear from the record that Plaintiff ever had any specialized mental health treatment, which, as the ALJ indicated, undermines the alleged severity of Plaintiff's depression and anxiety. (TR. 23.)

Upon careful review, the Court is satisfied that the ALJ afforded proper weight to Dr. Husen's opinion.

2. **Hypothetical Question**

Plaintiff argues that the hypothetical question posed to the vocational expert was improper because it failed to incorporate the limitations set out by Dr. Husen. As acknowledged by Plaintiff,

7

this argument hinges upon the determination of whether the ALJ assigned proper weight to Dr. Husen's opinion. (Filing No. 22 at CM/ECF p. 6.) For the reasons explained above, the ALJ afforded correct weight to Dr. Husen's opinion. Thus, the hypothetical question posed to the ALJ was sufficient as it included all the limitations supported by the evidence of record. *See Haggard v. Apfel*, 175 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question is sufficient if it sets forth the impairments which are accepted as true by the ALJ") (internal quotation omitted).

## CONCLUSION

For the reasons stated, and after careful consideration of each argument presented in Plaintiff's brief, the Court finds that the Commissioner's decision is supported by substantial evidence on the record as a whole and is not contrary to law.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for an Order Reversing the Commissioner's Decision (Filing No. 18) is denied. The Motion to Affirm Commissioner's Decision (Filing No. 20) is granted. Judgment will be entered by separate document providing that the decision of the Commissioner is affirmed.

Dated this 4th day of April, 2019.

BY THE COURT:

s/ Susan M. Bazis
United States Magistrate Judge